## TOLEDO MACHINE & TOOL CO. v. E. W. BLISS CO.

## E. W. BLISS CO. v. TOLEDO MACHINE & TOOL CO.

(Circuit Court of Appeals, Sixth Circuit.   March 9, 1923.)

### Nos. 3724, 3729.

1. Patents ⬦═▷328—Klocke patent, 955,173, held invalid as to claims 1, 2, and 3, and valid and infringed as to claims 4, 5, 6, and 7.

> Klocke patent, No. 955,173, for a drawing or punch press for sheet metal, *held* invalid as to claims 1, 2, and 3, and valid and infringed as to claims 4, 5, 6, and 7.

2. Patents ⬦═▷253—Superiority not negative of infringement.

> Superiority does not necessarily negative infringement.

Appeal and Cross-Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit for infringement between the Toledo Machine & Tool Company and the E. W. Bliss Company. From a decree the former appeals, and the latter cross-appeals. Affirmed.

A. J. Hudson, of Cleveland, Ohio (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for Toledo Machine & Tool Co.

Arthur C. Fraser, of New York City (Gustave R. Thompson and Fraser, Turk & Myers, all of New York City, and Charles S. Wachner, of Cleveland, Ohio, on the brief), for E. W. Bliss Co.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. [1] Suit for infringement of United States patent No. 955,173, April 19, 1910, to Klocke, for a drawing or punch press for sheet metal. The structure of the patent consists of a vertically acting press, having at its lower end a stationary bed which carries the lower die, upon which the material is clamped and worked; also having a blank holder, which is guided upon side frames of the machine, and a plunger or press (carrying the upper die), which is guided within the blank holder. A primary rotary transverse shaft located at the upper end of the machine operates a large gear wheel at each end of the shaft, and on the outside of the machine frame. Each of these gear wheels is connected with one end of each of three other transverse shafts; one being a rotary crank shaft, geared at each end to the inner side of the gear wheel, the crank shaft operating the plunger through links connected at their upper ends to the cranks. The other two shafts are rock shafts, one on each side of and parallel to the crank shaft, and in a somewhat higher plane. Each end of these rock shafts is operated by the gear wheel through a pitman connected at its upper end by a crankpin to the outside of the gear wheel, and at its lower end to a reciprocating slide located between the large gear and the outside of the side frame of the machine upon which it is guided; the slide being in turn connected by a link mechanism carried up on the inside of the large gear to a connection with the end of the rock shaft, which in turn, by means of toggle links, communi-

cates pressure to the blank holder. There being one link at each end of each of the two rock shafts, the pressure is thus exerted at each of the four corners of the blank holder. This distribution of power at each end of the machine, that is to say, from each end of the three shafts, is sometimes spoken of in the record as the "triple bilateral distribution" and sometimes as creating "bilateral symmetry." The connection between the. gear wheel and the ends of the rock shafts, by which the mechanism is carried down the outside of the gear wheel and then up on the inside thereof to one end of the rock shaft, is called in the record the "straddle drive." We print in the margin the seven claims of the patent,[1] each of which is in issue. The defenses

[1] "1. A drawing press having a plunger and a blank holder, a rotary shaft actuating said plunger, a pair of rock shafts actuating said blank holder; and mechanism at each end of said plunger actuating shaft for transmitting the motion thereof to each end of said rock shafts.

"2. A drawing press having a plunger and a blank holder, a rotary shaft actuating said plunger, a pair of rock shafts actuating said blank holder, and mechanism at each end of said plunger actuating shaft for transmitting the motion thereof to each end of said rock shafts, and gearing at each end of said plunger actuating shaft for driving it with equal pressure at each end.

"3. A drawing press having a plunger actuating shaft, a driving gear at the end thereof, and a blank holder actuating slide driven from said gear, located between said gear and the side frame of the machine and guided upon the side frame of the machine.

"4. A drawing press having a plunger actuating shaft and driving gears $M$ $M'$ at opposite ends thereof, and blank holder actuating slides $h$ $h'$ driven from said gears, located between said gears and the side frames of the machine, and guided upon the side frames of the machine.

"5. A drawing press having a plunger, a shaft $J$, cranks $H$ $H'$ on said shaft, links $F$ $F'$ between said cranks and opposite portions of the plunger, end bearings for the shaft located closely adjacent to said cranks, gears $M$ $M'$ upon the opposite ends of said shaft, a shaft $O$ carrying pinions $N$ $N'$ engaging the respective gears $M$ $M'$ whereby said shaft is driven with equal force at its opposite ends, and the strain is evenly distributed upon the plunger and at opposite parts of the shaft, a blank holder, a pair of rock shafts for actuating it, and links transmitting the motion of said rock shafts to opposite portions of the blank holder, said rock shafts also being driven with equal force at their opposite ends.

"6. A drawing press having a plunger, a shaft $J$, cranks $H$ $H'$ on said shaft, links $F$ $F'$ between said cranks and opposite portions of the plunger, end bearings for the shaft located closely adjacent to said cranks, gears $M$ $M'$ upon the opposite ends of said shaft, and a shaft $O$ carrying pinions $N$ $N'$ engaging the respective gears $M$ $M'$ whereby said shaft is driven with equal force at its opposite ends and the strain is evenly distributed upon the plunger and at opposite parts of the shaft. a blank holder, a pair of rock shafts $c$ $c'$ for actuating the same, and means for transmitting the motion of said gears $M$ and $M'$ to said rock shafts, said transmitting means being located at opposite sides of the machine so as to positively actuate the opposite ends of each of the shafts $c$ $c'$ from the gear at the corresponding side of the machine, so as to. maintain a uniform load upon said gears and to exert a uniform strain upon said rock shafts.

"7. A drawing press having a plunger, a shaft $J$, cranks $H$ $H'$ on said shaft, links $F$ $F'$ between said cranks and opposite portions of the plunger, bearings for the shaft located closely adjacent to said cranks, gears $M$ $M'$ upon the opposite ends of said shaft, and a shaft $O$ carrying pinions $N$ $N'$ engaging the respective gears $M$ $M'$, whereby said shaft is driven with equal force at its opposite ends and the strain is evenly distributed upon

are invalidity for lack of invention and noninfringement. The District Court held claims 1, 2, and 3 invalid, and claims 4, 5, 6, and 7 valid and infringed. Each party appeals.

The art in question was old and well-developed previous to the application for the patent in suit. There was nothing new in using driving gears at each end of a crank shaft operating the plunger, nor in using two rock shafts for actuating the blank holder, nor in driving the same at both ends, nor in the use of a slide for transmitting motion to the rock shafts, nor in the use of toggle actuated mechanism for transmitting motion from the rock shafts to the blank holder. But, while all these several uses were old, they were not all found in any one embodiment of the prior art. Invention may be found in the combining of these separately old elements in such a way as to produce a new result, or to produce the old result in a new and materially better way. Concededly, a drawing press with a crank shaft driven by gears at both ends, with two toggle actuating rock shafts driven from that crank shaft equally at both ends, was new. Equally admittedly, the prior art did not disclose a drawing press with a crank shaft at the top of the press driven by twin gears on its ends[2] and two rock shafts located between such gears, and any means for taking motion from the outer sides of both gears and transmitting such motion around both gears to the ends of both rock shafts on the inner sides of the gears. Indeed, the so-called "straddle drive" seems a new element as applied to a drawing machine of this character. The device of the patent was thus not anticipated.

The question of validity is merely one of invention, in view of the prior art. That the structure of the patent had pronounced advantages over the prior art is apparent. The driving of both the crank shaft and the rock shafts from both ends relieves the torsional strain likely to result from the application of power to but one end, thus practically requiring the power from each end to operate only to the center of the shaft, causing a more even and regular movement, and permitting the use of smaller shafts,[3] and, as applied to the rock shafts, makes the blank holder pressure more uniform. None of the power which operates the blank holder is transmitted directly from the crank shaft, although supplied from the same source of power, but each carries only its own normal load. As pointed out by the District Judge, the location of the driving wheels outside the frame of the machine gives more room between the side frames for the operating mechanism of both plunger and blank holder, and thus permits a greater width of work than was practicable under the prior art, and the device of the patent has increased quantity production of large

the plunger and at opposite parts of the shaft, a blank holder $A$, a pair of rock shafts $o$ $o'$ for actuating it, links transmitting the motion of said rock shafts to opposite portions of the blank holder, and means for transmitting the motion of the gears $M$ $M'$ to both ends of each of said rock shafts so as to drive them with equal force at opposite ends."

[2] The reference to a drawing press with a crank shaft at the top of the press is possibly made to distinguish a machine with an immovable bed from one whose bed is movable, and the pressure thus upwards.

[3] Some of those in use are 10 to 12 inches in diameter.

size stampings, especially the stamping of large automobile and fender parts, which require machines of enormous size, sometimes weighing more than 100 tons. We have no difficulty in agreeing with the District Judge that the structure of the Klocke patent in suit brings not only a better result than attainable in the old art, but produces that result in a materially better way, and that what Klocke accomplished amounted, broadly speaking, to invention, and not merely mechanical skill.

We also agree with the District Judge that claims 1 and 2 do not involve invention. Neither contains the straddle drive. The plunger actuating shaft of claim 1 is not driven at both ends. While claim 2 contains such feature, it calls for no specific mechanism, and neither claim contains anything patentable over the prior art. Claim 4 clearly involves invention. It calls not only for complete bilateral symmetry, but it calls for driving gears located outside the machine frame, together with slides between the gears and the side frames and guided thereupon. We cannot agree with defendant that the specification fails sufficiently to describe the so-called straddle drive. We think the specification, in connection with the drawings, fairly shows that the power actuating the rock shafts is carried by means of the pitman and slide, from the outer side of the gear wheel, under the same, and then upwards on the inner side of the gear wheel to the rock shaft.

Claim 3 differs from claim 4 only in that it calls for a one-end drive for both crank shaft and rock shafts. It has the straddle drive, and there is force in the suggestion that this straddle drive alone is enough to create invention. But no machine of that character has been built, or seems likely to be built. Such a machine would not serve the substantial purposes of the patent in suit, in that it lacks bilateral symmetry and does not make possible a very substantial broadening of the machine, and so has little, if any, increased utility as compared with double-driven operation of both crank shaft and rock shafts. Nor have we the benefit of favorable reception by the public or acquiescence therein as affecting the question of useful invention. We are therefore inclined to regard the claim as invalid.

In our opinion, claim 5 involves invention. Both the crank shaft and rock shafts are double-driven. The gears are outside the frame of the machine and the claim calls for link transmission between the rock shafts and blank holder. Its validity thus falls directly within the first of the concessions of novelty before referred to. True, it differs from claim 2 only in calling (in effect) for gears outside the frame of the machine and link transmission from rock shafts to blank holder; but we think these differences enough to distinguish. We do not think it open to criticism as being merely an aggregation. We think both claims 6 and 7 involve invention. Each calls for bilateral symmetry, for gear wheel connection with the outer ends of the crank shaft, and means for transmitting the motion of the gear wheels to the rock shafts. Claim 7 in terms calls for toggle actuating mechanism between rock shafts and blank holder. While claim 6 omits the link element, we are not impressed that this omission is sufficient to negative validity.

[2] Defendant's construction is practically identical with the structure of the Klocke patent, except in two particulars: First, defendant has cut away the central and comparatively nonessential portion of each of the two rock shafts, and, by the use of an additional gear at each end, making practically four rock shafts, instead of two; second, as the slide of defendant's press operates below the gear mechanism, additional linkage is provided between the lower end of the pitman and the rock shaft connection. But both in respect to the rock shafts themselves and the link connection defendant's machine operates in substantially the same way and produces the same result. We think defendant's mechanism in both the respects referred to is the mechanical equivalent of the mechanism of the patent in suit, although it is probably true that defendant's rock shaft construction is superior to Klocke's. The same may be true of the lower plane location of defendant's slides; but it is commonplace that superiority does not necessarily negative infringement.

It results from the views we have stated that claims 1, 2, and 3 should be held invalid, and claims 4, 5, 6, and 7 held valid and infringed.

The decree of the District Court is accordingly affirmed. The costs of this court will be divided.